UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ] | Cr. No. 21 – cr – 00121 |
| | ] | |
| v. | ] | |
| | ] | |
| ANTHONY RIMAS | ] | |

**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

The defendant, Anthony Rimas ('Rimas"), through counsel, files the following

Supplemental Sentencing Memorandum setting forth all factors that the Court should consider in

determining what type and length of sentence is sufficient, but not greater than necessary, to

comply with the statutory directives set forth in 18 U.S.C. § 3553(a). Additionally, contained

within the instant Supplemental Sentencing Memorandum, is a Motion for a Below Guideline

Sentence (Variance), contained in page 12, herein below.

The defendant notes that the Probation Department has done a complete and thorough job

of accurately presenting to this Court his personal history replete with the factual presentation of

his life, work history, family, emotional and physical events that have impacted his life. The

defendant further notes that the Probation Department's calculations of the sentencing guidelines

are detailed, thorough and presented with clarity. In response to the initial PSR, counsel objected

to a "two -level enhancement" because the offense involved three videos that involved one or

more prepubescent females in each video and possessed additional images of child pornography

that portrayed infants or toddlers pursuant to USSG 2G2.2(b)(2) as well as a "four-level

1

enhancement" because the offense involved material that portrayed two sadistic or masochistic images pursuant to USSG 2G2.2(b)(4)(A).  Subsequently, Counsel meet with the Government to review the images purporting to support each enhancement and has determined that Rimas will not press this objection. The Probation Department was timely notified of this as well.

However, Counsel takes the position that the BOL should be decreased by 2 levels pursuant to 2G2.2(b)(1). In the instant action, defendant's conduct was limited to the receipt or solicitation of material and the defendant did not intend to traffic in, or distribute material.

Additionally, Defendant believes that a 2-level downward variance is appropriate in this case as the use of a computer no longer distinguishes the defendant from most other possessors, since the offense of possessing child pornography is now committed almost exclusively by computer.

Accordingly, we believe that the base offense level should be decreased by 4 levels. Finally, Counsel has provided the Probation Department with some revised and clarified financial information which presents a clear view of the defendant's financial status.

However, it is important to note that subsequent to Rimas's response to the initial PSR and subsequent to the filing of his Sentencing Memorandum, the Probation Department issued a revised PSR that changed the application of the U.S.S.G. and resulted in a significant change. A thorough examination of the two (2) disparate Guideline applications will be addressed below.

**Introduction**

On September 2, 2021, Rimas waived indictment and pled guilty to a one-count Information, charging him with receipt of child pornography on or about March 9, 2021, in violation of 18 U.S.C. 2252A(a)(2)(B) and (b)(1).

**The Plea Agreement**

The parties agree that a mandatory minimum term of 5 years is applicable pursuant to 18 U.S.C. 2252A(b)(1).

**The guidelines**

As is typical in many child pornography cases, Rimas is attributed virtually every enhancement under the child pornography guideline, USSG § 2G2.2. In their initial PSR Probation found that the application of the Sentencing Guidelines resulted in a Total Offense Level of 31, PSR ¶¶ 41. Applying a CHC of I, Probation found that the application of the Sentencing Guidelines yields an advisory guideline range of 108 months to 135 months. This Total Offense Level includes a two-level enhancement because the offense involved a computer USSC 2G2.2(b)(6).

Defendant took the position that that 2G2.2(b)(1) applies to the facts at bar as the defendant's conduct was limited to the receipt or solicitation of material and the defendant did not intend to traffic in, or distribute material. As such, we believed that the BOL should be decreased by 2 levels.

Additionally, Defendant took the position that a 2-level downward variance is appropriate in this case as the use of a computer no longer distinguishes the defendant from most

3

other possessors (as was originally intended), since the offense of possessing child pornography is now committed almost exclusively by computer.

Should the Court agree, the defendant's Total Offense Level would be revised from 31 to 27. Combined with a CHC of 1, defendant would face a Guidelines Sentencing Range of 70 – 87 months.

In their application of the U.S.S.G. as set forth in the **revised PSR** dated February 28, 2022, probation takes the position that the cross reference at 2G2.2(c)(1) applies and the resulting offense level is higher than that derived from 2G2.2, yielding a BOL of 32. Additionally, the revised PSR increases the BOL by 2 levels pursuant to 2G2.1(b)(1)(B), along, with an additional 2 levels pursuant to 2G2.1(b)(6)(B)(ii).  This yielded an adjusted offense level of 36.    The revised PSR then reduces the adjusted offence level by 3 points for acceptance of responsibility pursuant to both 3E1.1(a) and 3E1.1(b). This results in a total offense level of 33. With a CHC of 1, the defendant would then face a Guideline Sentencing Range of 135 - 168 months.

Rimas objected to the Revised PSR. The majority of the Revised PSR focuses on a change in the Offense Level Computation ("OLC"). Rimas stands by his calculation as set forth in his response to the initial PSR. The sole change in the revised calculation stems from the application of the cross reference contained in 2G2(c)(1). The PSR applies this cross reference as it alleges that the defendant caused a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction. The sole basis for this fact stems from a text conversation dated February 2, 2021, between Rimas and a UC. The conversation is set forth in paragraph 11 of the Revised PSR and was contained in the original PSR as well. A review of the conversation

indicates that Rimas did ask for "any pics". But, it is important to note that the conversation indicates that he asked for a clothed as well as a naked pic. It was not until Rimas was prompted by the UC "So like ummmm if I took a nude like what would you me to take it if (sic)" that he responded. In essence, Rimas did not ask for a sexually explicit picture until the UC drew him further into the text chat. As such, we believe that the cross reference contained in 2G2.2(c)(1) should not apply and the defendant stands by his calculation as set forth in the initial PSR.

### Sentencing under *Booker*

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in Blakely v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines. United States v. Booker, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. Id. at 751. Accordingly, reaffirming its holding in Apprendi, the Court concluded that

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. Id. at 756.

Based on this conclusion, the Court further found those provisions of the federal

Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18

U.S.C. § 3553(b)(1) or which rely upon the Guideline's mandatory nature, 18

U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. Booker, 125 S. Ct. at

756. Accordingly, the Court severed and excised those provisions, "mak[ing] the

Guidelines effectively advisory." Id. at 757.

 Instead of being bound by the Sentencing Guidelines, the Sentencing Reform

Act, as revised by Booker, requires a sentencing court to consider Guidelines ranges,

see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence

in light of other statutory concerns as well, see § 3553(a). Booker, 125 S. Ct. at 757.

Thus, under Booker, sentencing courts must treat the guidelines as just one of a number

of sentencing factors set forth in 18 U.S.C. § 3553(a).

 The primary directive in Section 3553(a) is for sentencing courts to "impose

a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in

paragraph 2." Section 3553(a)(2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to   provide
just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or
other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1);

2) "the kinds of sentences available" (§ 3553(a)(3);

3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§ 3553(a)(6); and

4) "the need to provide restitution to any victims of the offense." (§ 3553(a)(7).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added).

7

This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. § 5H1. See also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); United States v. Naylor, 359 F. Supp. 2d 521 (W.D. Va. 2005) (concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth when he committed his predicate offenses – he was 17 – and noting that in Roper v. Simmons, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of Booker and § 3553(a) make clear that courts may no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore." United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.).  As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker." United

States v. Jaber, 362 F. Supp. 2d 365 (D. Mass. 2005). See also United States v. Ameline, 400

F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors

that a sentencing judge must consider in determining an appropriate individualized sentence"),

reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005).

Justice Scalia explains the point well in his dissent from Booker's remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after
>
> considering the recited factors (including the guidelines), has full
>
> discretion, as full as what he possessed before the Act was passed,
>
> to sentence anywhere within the statutory range. If the majority
>
> thought otherwise – if it thought the Guidelines not only had to be
>
> 'considered' (as the amputated statute requires) but had generally
>
> to be followed – its opinion would surely say so. Booker, 125 S.
>
> Ct. at 791 (Scalia, J., dissenting in part).

Likewise, if the remedial majority thought the guidelines had to be given "heavy weight,"

its opinion would have said so. The remedial majority clearly understood that giving any special

weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth

Amendment.

In sum, in every case, a sentencing court must now consider all of the § 3553(a) factors,

not just the guidelines, in determining a sentence that is sufficient but not greater than necessary

to meet the goals of sentencing.  And where the guidelines conflict with other sentencing factors

set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. See <u>United States v. Denardi</u>, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

### Nature and Circumstances of Offense

Upon information and belief, in October of 2020, a HIS Task Force officer began to conduct an investigation through an online chat in an attempt to identify individuals that were using various online platforms to exchange child pornography. After a month's long investigation, on March 11, 2021, HSI executed a warrant to search Rimas's home as well as his person. HIS made contact with Rimas as he left work and seized his iPhone. Rimas agreed to talk to HIS and admitted that the phone was his and was not used by anyone else. Additionally, Rimas identified the electronics located in his home that belonged to him. A search of the cell phone resulted in two video files of child pornography on March 9, 2021, which form the basis of the Information.

### History and Characteristics of Defendant

Rimas is a 47-year-old man who was born and raised in Massachusetts.  His father passed away suddenly in 1974 at the age of 42 when Rimas was only 9 months old. His father suffered from leukemia and died within 24 hours of being admitted to the hospital. Rimas's mother, Sandra Coppola, remarried when he was 3 years old, to Anthony Coppola ("Coppola"). Coppola was a father figure to young Rimas and seemed to treat the family well. It was not until

some years later that Rimas learned that Coppola had physically abused his sister. Rimas grew

up in a working-class family. He is close to both his sister, Tara, as well as his mother who is 81

years old and suffers from a number of health issues and is legally blind. Rimas is in contact

numerous times during the week with both his mother and sister and plays an active role in the

care of his mother.

        By all accounts, Rimas has lived a simple, productive life. He graduated from high

school in 1992.  In or about 1994/1995 he obtained an Associate's degree from Northern

Essex Community College. He then attended the TAD Institute in Chelsea, MA where he was

trained in auto mechanics. Finally, in or about 2001 he obtained his bachelor's degree in

business administration from UMass – Lowell. For approximately 20 years Rimas has been

employed at Home Depot, where he has held a variety of positions. Rimas has been married to

Valerie Rimas for 2 years. However, the couple has been in a relationship for 15 years and

have one child, Nicholas, who is 14 years old. He has provided for his family, both financially

and emotionally and has been a supportive son to his aging mother. Rimas has surrounded

himself with loving and fulfilling relationships as evidenced by letters of support.  *See Exhibit*

*B*.

         Throughout the pendency of this case, Rimas has taken responsibility for his actions and

taken steps to understand and address his behavior. He submitted to a forensic evaluation by

Fabian M. Saleh, M.D., D.F.A.P.A., who opined that Rimas presents as a very low risk for

recidivating with a sexual contact. This report has previously been provided to the Probation

Department and is incorporated into the PSR. Additionally, on his own, Rimas sought

counseling in order to help alleviate the issue that resulted in the instant action. Counseling, in

the wake of the covid pandemic was difficult, at best. However, Rimas was able to secure sessions with Wayne Hansen, M.S. Probation received releases so that they were able to obtain his records and said records have been previously forwarded to the Probation Department and are incorporated by reference herein.

Since his release on pretrial conditions on September 2, 2021, Rimas has had no issues of non-compliance and has made a satisfactory adjustment to supervision.  He has had access to a computer, smartphone and internet without any issues. Additionally, Rimas had maintained his employment until just recently. He was forced to terminate his employment subsequent to his Rule 11 hearing.

## Motion for Below-Guideline Sentence (Variance)

Rimas moves the Court to sentence him below the advisory guideline range. A sentence of five years is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing, *see* 18 U.S.C. § 3553(a).

While the now advisory Guidelines, *see United States v. Booker*, 543 U.S. 220 (2005), must still be properly calculated and the court must consider the advisory Guidelines range, the court may not presume this advisory range is reasonable.  *United States v. Stone*, 575 F.3d 83, 94 (1st Cir. 2009).  The advisory Guidelines range now serves as merely an initial benchmark for sentencing, which is ultimately considered along with other 18 U.S.C. §3553(a) factors.  *See Rita v. United States*, 551 U.S. 338 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007).

*Kimbrough* "makes manifest that sentencing courts possess sufficient discretion under section 3553(a) to consider requests for variant sentences premised on disagreements with the manner in which the sentencing guidelines operate." *Stone*, 575 F.3d at 89.  This Court's precedent "has interpreted *Kimbrough* as suppling this power even where a guideline provision is a direct reflection of a congressional directive." *Id.*

The child pornography guideline, found at §2G2.2 of the Sentencing Guidelines, "is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what §3553 requires." *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010); *see also United States v. Stone*, 575 F.3d 83, 97(1st Cir. 2009) ("[W]e wish to express our view that [§2G.2 is] harsher than necessary . . . [F]irst-offender sentences of this duration are usually reserved for crimes of violence and the like."); *United States v. Grobe*r, 624 F.3d 592 (3d Cir. 2010) (finding district court provided compelling explanation for policy concerns and justification for sentence outside range).

Because the child pornography guideline offense levels and enhancements were directed by Congress and were not the result of "an empirical approach based on data about past sentencing practices," the resulting Guideline ranges can yield unreasonably high sentences in otherwise "run of-the-mill cases." *United States v. Dorvee*, 616 F.3d at 186-87.  *See also United States v. Tutty*, 612 F.3d 128, 132-33 (2d Cir. 2010) (suggesting that the guidelines can generate "unreasonable results" if not "carefully applied.").  These directives led first-time offenders to receive offense levels at or near the statutory maximum for the offense because most, if not all, of the enhancements apply in nearly every case. *See Dorvee*, 616 F.3d at 186-87; *Grober*, 624 F.3d at 603-08 (reviewing

history of the child pornography guideline); *United States v. Henderson*, 649 F.3d 955, 960-63 (9th Cir. 2011) (same).

In 2012 the United States Sentencing Commission examined child pornography sentencing outcomes. *See* U.S. Sentencing Comm'n, *Report to the Congress: Federal Child Pornography Offenses, ii-iii* (2012) ("*The Report*"). The Commission compiled *The Report* in part to address the increasing rate of below-guideline sentences for offenders sentenced under §2G2.2 and because the sentencing data "indicate[d] that a growing number of courts believe[d] that the current sentencing scheme in non-production offenses [was] overly severe for some offenders." *Id. at ii.*

In June 2021, the United States Sentencing Commission published its study concerning Federal Sentencing of Child Pornography: Non-Production Offenses. *See*,

https://www.ussc.gov/sites/default/files/pdf/research-and-

publications/researchpublications/2021/20210629_Non-Production-CP.pdf (last visited July 2, 2021) ("2021 Report"). This publication served to update and expand the U.S. Sentencing Commission's 2012 Child Pornography Report. Although the 2012 report concluded that "the non-production child pornography sentencing scheme should be revised to account for technological changes in offense conduct, emerging social science research about offender behavior, and variations in offender culpability and sexual dangerousness" Congress has not acted on those recommendations and the guideline enhancements remain intact. *Id*. at 2-3. Accordingly, judges continue to sentence nonproduction offenders below the guideline range. *Id*.

The 2021 Report produced key findings which once again underscore how the guideline enhancements have not evolved with the current technology and have "become so ubiquitous that they now apply in the vast majority of cases sentenced under [USSG] 2G2.2*." Id.* at 4. For

example, "in fiscal year 2019, over 95 per cent of non-production child pornography offenders received enhancements for use of a computer and for the age of the victim (images depicting victims under the age of 12)".  *Id.* Enhancements for images depicting sadistic conduct or abuse of an infant or toddler were applied in 84% of cases and an enhancement for having 600 or more images was applied in 77.2% of cases.  *Id.* (noting that non-production offenses involved median number of 4,265 images). (The PSR calculates the number of images attributable to Rimas at 593)

Of interest to Rimas's case, the 2021 Report documented the sentencing outcomes for common non-production offenses where the resulting guideline range was 78 to 97 months, accounting for four specific offense characteristics applied in the majority of cases. *Id.* at 54, fn. 126  (images depicting a prepubescent minor or a minor under the age of 12; images depicting sadistic or masochistic conduct; the use of a computer; 600 or more images).  The study, comprised of 119 possession offenders, revealed that the average sentence was 47 months, with 81.5% sentenced below the guideline range. *Id.* at 55 (sentences ranging from probation to 228 months for the 119 offenders).  The 2021 Report revealed "significant sentencing disparities among similarly situated offenders as courts and the government contend with the outdated statutory and guideline structure."  *Id.* at 69.  The report concluded that "even though the key factors identified in the 2012 Child Pornography Report influence sentences, they cannot be considered in a sufficiently uniform manner in the absence of a properly calibrated guideline that jettison outdated factors."  *Id.*

**§ 3553(a)(6).  The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.**

1.	An analogous case recently before the U.S. District Court – NH can be found in *U.S. v. Colburn*, 19CR208. In *Colburn*, a review of court documents indicates that during the course of an investigation investigators identified a yahoo account email address associated with the receipt of child pornography. Like Rimas, the facts indicate that Colburn met with investigators and admitted that the email address was his and that he was the only one that accessed the account. The investigators then searched Colburn's home, cell phone and laptop that contained over 2,000 still images and 141 videos of child pornography (141 videos @ 75 images each equates to 10,575 images). Some of the files depicted sexual abuse of an infant or toddler, some depicted prepubescent minors and some depicted the bondage of minors. *Furthermore, the evidence revealed a video that Colburn created using a cellphone camera. In the video, the camera follows two minor girls wearing shorts and surreptitiously records them as they walk around an outdoor event. The focal point of the camera is their buttocks.* On its face, the sole difference between the Colburn matter and the instant case is that Colburn was charged with *possession* of child pornography, while Rimas has been charged with *receipt* of the same. However, when looking at the facts, one cannot be in possession of child pornography without being in receipt of it as well.

Additionally, we believe that it is important to note that in <u>Colburn</u> the United States requested that a two – level downward variance be imposed as it is recognized that possessing child pornography is now committed exclusively by computer. Likewise, in the case at bar,

Rimas received the images on his computer or cell phone as well. At sentencing, Colburn requested that the Court vary downward from a guideline range of 78 to 97 months of imprisonment and impose a term of probation. The Government, on the other hand, submitted that a sentence of 63 – months of imprisonment, followed by five years of supervised release, was sufficient but not greater than necessary to meet the purposes of 18 U.S.C 3553(a). **Colburn was ultimately sentenced to 36 months in federal prison, a reduction of more than 50% off of the low end of the guideline range.**

      2.      Another analogous case recently before the U.S. District Court – NH can be found in *U.S. v. Adams,* 21CR183. In *Adams*, the facts indicate that in August of 2020 the FBI received information that Adams was attempting to contact underage females. Adams established contact with an undercover UC with the online persona of a 13-year-old girl. The two then maintained contact. In October of 2020 Adams sent sexually explicit pictures and a video of himself and engaged the UC in an explicit conversation. Search warrants were executed at his home and electronic devices were seized. Forensic review revealed that Adams was engaged in sexually oriented chats with numerous minor females. Like Rimas, Adams denied ever meeting in person anyone he had chatted with online. **Adams was sentenced to 12 months and one day for attempted transfer of obscene material to a minor**.

      3.      A third case in the U.S. District Court – NH is *U.S. v Cote,* 21CR00140. On or about January 25, 2022, Cote was sentenced to 60 months for possession of child sexual abuse material. *Cote* is analogous to Rimas in that a federal search warrant was executed at Cote's residence in Franklin, NH. The investigation into Cote stemmed from activity that took place on a social media account that resolved back to Cote. Various electronic devices were seized during

the search. Forensic review of the devices revealed over 2,500 images and over 300 videos depicting child sexual exploitation material. Like Rimas, Cote also admitted to viewing and possessing child sexual abuse material. ***However, unlike Rimas, Cote admitted to trading the material with others online.***

4.      A fourth case in the U.S. District Court – MA is *U.S. v Carme*, 10CR10073. On or about March 8, 2022, Carme was sentenced to 63 months. Carme had pled guilty to distribution of child pornography, receipt of child pornography and one count of possession of child pornography involving a prepubescent minor and a minor who had not attained 12 years of age. Carme had downloaded and distributed numerous images and video files depicting child pornography. During a search of his home, a laptop and external hard drive were seized. Forensic review of the hard drive revealed approximately 7,811 images and 616 videos of child pornography. abuse material. ***However, it is important to distinguish that unlike Rimas, Carme distributed the material to others.***

5.      A fifth case in U.S. District Court – Maine is *U.S. v. Andrew Hazelton*. On or about January 28, 2022, Hazelton was sentenced to 5 years in prison followed by 5 years of supervised release for possessing child pornography. According to court records, Hazelton chatted with a 10-year-old girl. ***During the chat after learning that she was 10, he said that he wanted to see her "sexy body" and asked her to send him pictures of her in her panties and without a shirt.*** He also said that he wanted to have sex with her. Investigators searched his residence. An analysis of his phone revealed a folder containing dozens of files depicting minors, some of those prepubescent, engaging in sexually explicit conduct.

6.       A sixth case in U.S. District Court – RI is *U.S. v. Richard Woodhead*, 17CR 068. On or about December 15, 2017, Woodhead, an Attleboro, MA police sergeant, was sentenced to 60 months in federal prison for attempted receipt of child pornography. According to court documents and information presented to the Court, between September 2016 and December 2017, Woodhead had posted multiple online advertisements. In the advertisements, Woodhead requested to see nude pictures of people's daughters. A UC began communicating with Woodhead and had multiple conversations with him. During the conversations, Woodhead and the UC discussed meeting so that Woodhead could engage in sexual relations with the child. **Additionally, Woodhead requested that the UC send him naked pictures of the child.**

7.       Finally, the case of *U.S. v Anthony Weiner*, 17cr307 (Southern District of NY) is directly illustrative of a case in which, while applicable, the Court did not impose a sentence subject to the cross – reference contained in USSG 2G2.1. In *Weiner*, the defendant pled guilty to a one count information charging him with the transfer of obscene material to a minor. In their calculation of the Guidelines, the Government found the following. A BOL of 10 pursuant to (2G3.1(a). A 7-level increase under 2G3.1(b)(1)(E), and 2 level increase for the use of a computer (2G3.1(b)(3). The Government then applied the cross reference under 2G2.1, which yielded a BOL of 32. To this, a 2-level increase under 2G2.1(b)(1)(B) was applied as the offense involved a minor between the age of 12 and 16. Likewise, a 2-level enhancement was applied under 2G2.1(b)(6)(B)(i) for use of a computer. Weiner then received a 3-level departure for acceptance of responsibility, for an applicable Guideline offense level of 33, which yielded a Guideline range of 135 – 168 months. These calculations are, in essence, identical to the instant

action. However, it is important to note that **Weiner received a sentence of 21 months**, far below the Guideline sentence.

## Requested Relief

The paramount directive in 18 U.S.C. §3553(a) is that the Court must impose a sentence that is "sufficient, but not greater than necessary," to achieve the purposes of the sentencing statute. 18 U.S.C. §3553(a). While the child pornography guideline provides a one-way ratchet, the sentencing statute calls for a holistic inquiry. Rimas presents a number of mitigating factors in support of a downward variance: 1) he has no criminal record; 2) he has complied with his conditions of release; 3) he is at a relatively low risk for recidivating with a contact offense; 4) he has held long-term employment and financially supported his family; 5) he has a supportive family and friends; 6) he is the father of a young teenage son who he is extremely close to, and 7) he has voluntarily engaged in counseling to address this offense.

A sentence of five years (60 months) is sufficient to promote all the purposes of sentences, including reflecting the seriousness of the offense, promoting respect for the rule of law, and providing just punishment, and deterring further criminal conduct.

Defendant additionally requests that he be designated to serve his sentence at FCI Devens.

## CONCLUSION

For the reasons set forth above, the Court should grant a sentence which is below and outside of the applicable guideline range. Rimas submits that a sentence of 60 months, followed

by 3 years of supervised release is sufficient, but not greater that necessary to comply with the

statutory directives set forth in 18 U.S.C. 353(a).


Respectfully submitted,
ANTHONY RIMAS
By His Attorney,


Date:   March 28, 2022                     */s/ Neil F. Faigel*
                                           Neil F. Faigel
                                           10 Main Street Suite L-2
                                           Andover, MA 01810
                                           (978) 681 – 9600
                                           E-mail: attyfaigel@comcast.net

## CERTIFICATE OF SERVICE

I, Neil F. Faigel, hereby certify that on March 28, 2022, a true copy of the above document was sent via ECF to AUSA Anna Krasinski.


*/s/ Neil F. Faigel*